

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00885-CR

Charles **ROBNETT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR12773B
Honorable Frank J. Castro, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 24, 2021

AFFIRMED

In three issues on appeal, appellant Charles Robnett argues the trial court committed reversible error when it declined to grant a mistrial. We affirm the trial court's judgment.

### BACKGROUND

Trial testimony established that Robnett and Michael Aguilar met Gary Barnhardt and Albert Ramirez in a neighborhood to sell them marijuana. The drug deal went bad and Barnhardt and Ramirez were shot. Barnhardt later died at the hospital. The State charged Robnett with

capital murder, and he pleaded not guilty. The jury found Robnett guilty, and the trial court sentenced him to life in prison without the possibility of parole. He now appeals.

## ANALYSIS

### *Standard of Review*

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Mistrials are "an extreme remedy" granted "only when residual prejudice remains after less drastic alternatives are explored." *Id.* at 884–85 (internal citations omitted). If the trial court could have reasonably determined that the challenged conduct did not rise to that level, then we must uphold the trial court's ruling to deny the mistrial motion. *Id.* Additionally, when an instruction to disregard the matter would have cured any resulting harm, it is within the discretion of the trial court to deny the mistrial motion. *Young v. State*, 137 S.W.3d 65, 72 (Tex. Crim. App. 2004). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ocon*, 284 S.W.3d at 884. We review a trial court's denial of a motion for mistrial for abuse of discretion and will not reverse that decision unless it was outside the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

### *"Commotion" Outside the Courtroom*

During voir dire, while the venire was waiting outside the courtroom, Juror Number 85 told the bailiff she needed to leave to pick up her neighbor's children. The trial court then spoke to Juror Number 85 outside the presence of the other venire members, and she told the court "[e]veryone is getting upset about being here after 5:00, not just me." The court instructed her to make childcare arrangements and denied her request to leave. Over the next two hours, both sides questioned the venire members and exercised their strikes.

The record describes the approximately one hundred jurors in the hall becoming increasingly loud and agitated. At 6:43 p.m., after a break in the record, the trial court again addressed Juror Number 85 inside the courtroom and out of the presence of other members of the venire about an event that occurred off the record. During that exchange, the record reflects a "[c]ommotion outside the courtroom" occurred. Juror Number 85 apologized for what the trial court characterized as her earlier outburst. The court asked the bailiff whether anyone else was "yelling out there." The bailiff told the court, "[t]here wasn't a lot of yelling." The court then released Juror Number 85 and prepared to swear in the jury.

Defense counsel approached the bench and asked to speak to the bailiffs about "the commotion." Defense counsel explained he "may move for a mistrial" if the selected jurors were upset, because he did not want "that to have an effect on their ability to hear the case." The trial court responded, "[t]he bailiffs just told them to get back outside while they were waiting," denied the request to question the bailiffs, then swore in the jury.

The trial court recessed for the weekend and reconvened on Monday. Before calling the jury into the courtroom, the court summarized the "commotion" and announced it would question the jurors individually about what they heard and whether they could be fair and impartial. The trial court also gave defense counsel and the State an opportunity to ask questions. While some jurors explained that they saw others become upset about how long jury selection was taking, all jurors confirmed that, despite the commotion, they could be fair and impartial. Defense counsel then moved for a mistrial arguing that the totality of the situation had tainted the jury. The trial court denied counsel's request.

On appeal, Robnett argues the trial court erred when it denied his request "to investigate possible jury tampering" and for a mistrial related to the commotion. According to Robnett, the

trial court's failure to grant a mistrial or give a curative instruction denied him a fair trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments of the U.S. Constitution.

The State contends Robnett's argument is multifarious and alternatively argues this argument is not preserved because he did not request a curative instruction. Finally, the State maintains the trial court cured any error when it held a hearing with each juror individually to determine whether the commotion tainted the proceedings.

*Applicable Law and Application*

We address Robnett's first complaint in the interest of justice. *See Pieper v. State*, Nos. 04-19-00377-CR & 04-19-00378-CR, 2020 WL 5646929, at *4 (Tex. App.—San Antonio Sept. 23, 2020, no pet.) (mem. op., not designated for publication). The U.S. and Texas Constitutions guarantee an accused the right to a trial by an impartial jury. U.S. CONST. amend VI; TEX. CONST. art. I, § 10. To obtain relief through an argument that juror bias required a mistrial, actual juror bias must be established. *Uranga v. State*, 330 S.W.3d 301, 304 (Tex. Crim. App. 2010) (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982)). Here, the record shows that none of the jurors seated were involved in the commotion or spoke about the case while the commotion occurred. The record also demonstrates that the trial court, defense counsel, and the State individually questioned all jurors about the effect of the commotion, and they all testified that they could remain fair and impartial. Nothing in this record establishes that any of the jurors were actually biased. *See id.* at 307. Furthermore, the trial court was in the best position to weigh the credibility of the jurors' testimony that they could be fair and impartial. *Id.* Under these circumstances, we conclude the trial court did not abuse its discretion in refusing to grant a mistrial. We overrule Robnett's first issue.

### *Police Presence*

Robnett next argues the trial court erred when it did not sua sponte declare a mistrial after overruling his objection to the presence of police officers in the courtroom. This issue arose after a bench conference in which the State informed the court that Aguilar was its next witness, and "this is the witness that there was kind of a threat made." After several officers escorted Aguilar into the courtroom, the following exchange occurred at the bench:

| | |
|---|---|
| Defense Counsel 1: | The problem is, looks like the Army just walked in here. It's giving the jury the impression that -- that a bad reflection on our client in terms of whether there's something up. And we're going to object to 15 officers now coming in and the jury -- |
| Court: | There's two in here. I don't know why they brought additional five or six or seven to come in. There was only a couple. I don't have any idea why they brought so many coming in. There's two now. Again, I didn't ask for them to bring – |
| Prosecutor: | We let everybody know for security concerns. We didn't suggest anything. |
| Defense Counsel 2: | The suggestion is made. |
| Court: | Last night when you were -- |
| Defense Counsel 1: | In terms of the jury, in terms of that reflects negative on my client, it's my belief, Judge, we want the record to be clear that when this witness came into the courtroom there were like, I swear, at least six or seven officers that came in. They're gone now it appears. |
| Defense Counsel 2: | As well as from the DA's office who had marked item -- you know, clothing. |
| Prosecutor: | I would say the State, for the record, besides the two bailiffs assigned here, the State only saw two uniformed bailiffs walk in. |
| Court: | I saw at least a handful. I know there was some security concerns. I don't know, you know, if there were that many, but I note your objection. It's overruled. |

On appeal, Robnett claims the trial court was required to grant a mistrial sua sponte because "the inherent prejudice lingered in the minds of the jurors for the rest of the trial." He contends the police presence tainted the trial because the jury could have assumed he was particularly dangerous. He further asserts a curative instruction would not have alleviated this fundamental error and, as a result, he was denied a fair trial.

*Applicable Law and Application*

The U.S. Supreme Court has held that the conspicuous deployment of security personnel in a courtroom during trial is not inherently prejudicial, and reversal is required only when "an unacceptable risk is presented of impermissible factors coming into play." *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986) (quoting *Estelle v. Williams*, 425 U.S. 501, 505 (1976)). Without such a showing of actual prejudice, the presence of security at a defendant's trial should not be interpreted as a sign that the defendant is "particularly dangerous or culpable." *Id.* at 569.

Similarly, the Texas Court of Criminal Appeals has found that actual prejudice did not occur when the record did not show any disturbance or confusion caused by the presence of the officers. *Sterling v. State*, 830 S.W.2d 114, 118 (Tex. Crim. App. 1992). The Court of Criminal Appeals has also held that the presence of armed guards is justified when there is a threat to courtroom security. *Id.* (citing *Caraway v. State*, 550 S.W.2d 699 (Tex. Crim. App. 1977); *Chappell v. State*, 519 S.W.2d 453 (Tex. Crim. App. 1975)).

Assuming without deciding that this complaint is properly preserved, Robnett does not point to any disturbance or confusion caused by the police presence, and the record does not show any. *See id*. Furthermore, on this record, and in light of the threat referenced at the bench conference, we cannot say that the presence of armed guards was unjustified. *See id*. Finally, Robnett argues the jury could have assumed the show of force meant *he* was particularly dangerous. But it is equally plausible that the jury could have concluded that the police presence

was necessary because *Aguilar* was particularly dangerous. *See Holbrook*, 475 U.S. at 569 (pointing out jurors may not infer anything at all from the presence of armed guards).

The mere assertion that the jury could have assumed "the Army" was present in the courtroom because Robnett was particularly dangerous does not demonstrate actual prejudice or establish a deprivation of the right to a fair and impartial jury. In the absence of a showing of actual prejudice arising from the police presence, we cannot conclude the trial court abused its discretion by failing to sua sponte declare a mistrial. *See id.*; *Sterling*, 830 S.W.2d at 118. We overrule Robnett's second issue.

### *Improper Comment During Closing Argument*

Finally, Robnett contends the trial court erred when it denied his request for a mistrial during closing argument when the prosecutor described the evidence and stated:

> And that's why it's easy for you to come to this conclusion, to know beyond any reasonable doubt that this defendant is absolutely guilty of capital murder. No doubt. There's no doubt. We all know that he did it.
> He knows that he did it. You're not telling him anything that he doesn't know. He knows exactly what he did.

Robnett objected and moved for a mistrial; the trial court sustained the objection and overruled his mistrial motion. While the jury deliberated, Robnett reasserted his objection, specifying the State's argument was a comment on his right to remain silent and "the only way to cure it [was by] granting the defense's mistrial [request]." The trial court again denied the requested mistrial and then noted that counsel did not request a curative instruction.

On appeal, Robnett contends the State made an improper comment on his failure to testify and, by allowing the comment, the court violated his Fifth Amendment right against self-incrimination. He further asserts an instruction would not have cured the prejudice caused by the improper comment. The State disagrees, arguing Robnett failed to preserve this issue because a

curative instruction would have cured any prejudice stemming from the comment. The State further argues that even assuming Robnett preserved this issue, the State's comment was proper.

*Applicable Law and Application*

The State violates a defendant's "privilege against self-incrimination and the freedom from being compelled to testify" by commenting on a defendant's failure to testify. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). "[A] prosecutor's comment amounts to a comment on a defendant's failure to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify." *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004). To make this determination, we must analyze the context in which the comment was made. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011).

We address Robnett's final complaint in the interest of justice. *See, e.g., Batten v. State*, No. 04-19-00197-CR, 2020 WL 4606895, at *2 (Tex. App.—San Antonio Aug. 12, 2020, no pet.) (mem. op., not designated for publication). Robnett relies on *Allen v. State* to support his contention that the State's comment constituted an improper comment on his failure to testify. In *Allen*, during closing argument in a burglary of a habitation trial, the prosecutor said that the defendant knew what happened to the stolen property. *Allen v. State*, 693 S.W.2d 380, 384 (Tex. Crim. App. 1984) (op. on rehearing). The Texas Court of Criminal Appeals ultimately held the remark was not a comment on the defendant's failure to testify. *Id.* at 384–86. It reasoned the comment was "merely a summation of the evidence" and did not meet the threshold of "be[ing] manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." *Id.* at 385–86.

Here, the State's remark was preceded and followed by a summary of the evidence. *See id.* at 384. The record also shows the trial court did not construe the prosecutor's remark as a

comment on Robnett's failure to testify. *See Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *7 (Tex. App.—El Paso Oct. 14, 2015, pet. ref'd) (op.) (holding prosecutor's comment was not improper when trial court did not construe it as comment on defendant's failure to testify). When considering the comment in context of the State's entire closing argument, we cannot conclude the trial court abused its discretion in reaching that conclusion. We therefore overrule Robnett's final issue. *See Randolph*, 353 S.W.3d at 891.

## CONCLUSION

Because we conclude the trial court did not abuse its discretion in declining to grant a mistrial, we affirm the trial court's judgment of conviction.

Beth Watkins, Justice

Do Not Publish